**Roland A. LeBLANC, Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–Appellee.**

**No. 94–5052.**

United States Court of Appeals, Federal Circuit.

March 23, 1995.

Peter W. Adler, Law Offices of Peter W. Adler, Natick, MA, argued, for plaintiff-appellant.

Michael C. Theis, Trial Atty., Commercial Litigation Branch, Dept. of Justice, Washington, DC, argued, for defendant-appellee. With him on the brief were Frank W. Hunger, Asst. Atty. Gen. and David M. Cohen, Director.

Before NIES, NEWMAN, and MAYER, Circuit Judges.

MAYER, Circuit Judge.

Roland A. LeBlanc appeals the judgment of the United States Court of Federal Claims, No. 93–682C (Nov. 9, 1993), dismissing his claims against the United States. Because we agree that the Court of Federal Claims had no jurisdiction, we affirm.

### Background [1]

On October 21, 1988, LeBlanc filed suit against Raytheon Company, Inc. (Raytheon), in the United States District Court for the District of Massachusetts. He alleged that he had discovered Raytheon's fraudulent mishandling of government contracts during the course of his employment as a quality assurance specialist at the government's Defense Contract Administration Service (DCAS). His suit, filed under the False Claims Act, 31 U.S.C. §§ 3729–3733 (1988 & Supp. V 1993), sought to recover the government's damages resulting from this fraud.

The False Claims Act provides a framework for detecting and countering fraud against the government. One element of the statutory scheme authorizes the district courts to hear *qui tam* suits, whereby certain private persons may bring actions, in their own name and the government's, to recover damages for such fraud. *Id.* § 3730(b). The government may elect to proceed with the action itself, undertaking primary responsibility for prosecuting the suit, *id.* § 3730(b)(4)(A), or it may decline to intervene, leaving the person initiating the suit, the "relator", to pursue the suit on its behalf,

---

**1.** Because the Court of Federal Claims dismissed LeBlanc's complaint before the government filed its answer, it made no findings of fact. Accordingly, the facts recited here are taken from those found in LeBlanc's Massachusetts lawsuit and from his brief on appeal to this court.

*id.* § 3730(b)(4)(B). Whether or not the government intervenes, the relator is entitled to a portion of any recovery resulting from prosecution or settlement of the government's claim. *Id.* § 3730(d).

The district court dismissed the case, holding that government employees may not file suit under the False Claims Act. *United States ex rel. LeBlanc v. Raytheon Co.,* 729 F.Supp. 170, 177 (D.Mass.1990). LeBlanc appealed to the United States Court of Appeals for the First Circuit, which affirmed the dismissal on narrower grounds. 913 F.2d 17, 20 (1st Cir.1990). The First Circuit decided that the False Claims Act might extend to some government employees, but that LeBlanc's suit was barred by 31 U.S.C. § 3730(e)(4), which prohibits suits based on information disclosed to the public. The court concluded that the information on which the suit was based was public knowledge because LeBlanc obtained it in the normal course of his duties at DCAS, and that it did not fit within the "original source" exception to the bar, *id.* § 3730(e)(4)(A)–(B), because he had no "independent knowledge of the information." 913 F.2d at 20.[2] LeBlanc sought review of this decision in the Supreme Court, which denied his petition for a writ of certiorari. 499 U.S. 921, 111 S.Ct. 1312, 113 L.Ed.2d 246 (1991).

LeBlanc now alleges that he reported his observations and suspicions to his supervisors while he was at DCAS, but that the government covered up his allegations of fraud in Raytheon's contracts. He says that he was terminated from his DCAS position when he pressed for a full investigation of his allegations, and claims he has been blacklisted from government employment as a result of what he characterizes as whistleblowing activity. He filed this suit in the Court of Federal Claims alleging constitutional and statutory violations, and seeking damages resulting from the government's alleged improper interference in his district court action, a portion of an alleged settlement between Raytheon and the government, and

reinstatement and back pay. The trial court dismissed the suit.

## Discussion

■ The jurisdiction of the Court of Federal Claims arises chiefly from the Tucker Act, which gives that court "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a) (Supp.V 1993). This statute confers jurisdiction on the Court of Federal Claims, and a corresponding waiver of the government's sovereign immunity from suit, when the constitutional provision, statute, or regulation in question expressly creates a substantive right enforceable against the federal government for money damages. *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976). The question is whether LeBlanc's claims meet this standard.

■ First, the constitutional claims. His complaint included counts alleging violation of his rights under the Due Process Clauses of the Fifth and Fourteenth Amendments, the Equal Protection Clause of the Fourteenth Amendment, and the doctrine of separation of powers. None of these is a sufficient basis for jurisdiction because they do not mandate payment of money by the government. *See Carruth v. United States,* 627 F.2d 1068, 1081, 224 Ct.Cl. 422 (1980) (no jurisdiction based on Fifth Amendment Due Process or Equal Protection); *cf. United States v. Connolly,* 716 F.2d 882, 887 (Fed. Cir.1983) (no jurisdiction based on First Amendment).

■ Nor is there jurisdiction over the wrongful discharge claims. LeBlanc relies on a False Claims Act provision creating a remedy for employees who suffer retaliation

---

**2.** LeBlanc apparently then filed a second False Claims Act suit against Raytheon in the United States District Court for the Middle District of Florida, which was transferred to the District of Massachusetts and dismissed on res judicata

grounds. *United States ex rel. LeBlanc v. Raytheon Co.,* No. 92–10999, 1995 WL 352987 (D.Mass. May 15, 1992), *aff'd,* 981 F.2d 1245 (1st Cir.1992) (table), *cert. denied,* —— U.S. ——, 113 S.Ct. 2416, 124 L.Ed.2d 639 (1993).

from their employers as a result of activities in furtherance of a *qui tam* suit.[3] That provision reads:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

31 U.S.C. § 3730(h). He suggests that the statute's "any employee" includes government employees, so that it expressly creates a remedy enforceable against the United States in the Court of Federal Claims. But whether or not we would agree with this interpretation if section 3730(h) stood in isolation, we must first consider the context, for Congress has spoken at some length on federal employment law.

■ The Civil Service Reform Act of 1978 (CSRA), Pub.L. No. 95–454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C. (1988 & Supp. V 1993)), created a comprehensive system of procedural protections for civil service employees faced with adverse personnel actions. This framework for review of certain types of personnel actions essentially preempted the field, superseding the haphazard arrangement of administrative and judicial avenues for appeals of adverse actions to the Civil Service Commission, the district courts, and the Court of

Claims. *See Fausto v. United States,* 484 U.S. 439, 444–45, 108 S.Ct. 668, 671–72, 98 L.Ed.2d 830 (1988).

■ The cornerstone of the CSRA's protections is the aggrieved employee's right to seek review of adverse agency action in the Merit Systems Protection Board. 5 U.S.C. § 7701.[4] The board may review the record in support of the agency's decision, and will reverse that decision where it is not supported by the facts, involves harmful legal or procedural error, or is based on certain "prohibited personnel practices." 5 U.S.C. § 7701(c). "Prohibited personnel practices" include retaliation against whistleblowers: action taken (or not taken) because of "any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences—(i) a violation of any law, rule, or regulation, or (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety...." *Id.* § 2302(b)(8)(A). Among others, the appeal right extends to all qualifying employees who are removed based on unacceptable performance or for the efficiency of the service. *Id.* §§ 4303(e), 7512–7513. But as LeBlanc points out, the right of direct appeal to the board does not include probationary employees. *Id.* §§ 4303(f), 7511(a); *see Fausto,* 484 U.S. at 450, 108 S.Ct. at 675. He maintains that since he had no remedy under the CSRA because of his probationary status, the subsequently enacted provisions of the False Claims Act give him a right to sue in the Court of Federal Claims under section 3730(h).[5] We do not agree.

---

3. He also alleges wrongful discharge in violation of public policy. There is no jurisdiction over this claim because allegations of violation of public policy alone do not fit within the plain language of the Tucker Act.

4. LeBlanc attempted to avail himself of another CSRA remedy—the employee's right to file charges of prohibited personnel practices with the Office of Special Counsel. *See* 5 U.S.C. § 1206, repealed by Whistleblower Protection Act of 1989, Pub.L. No. 101–12, § 3(a)(8), 103 Stat. 18 (1989). The Special Counsel eventually determined that no action was warranted on his claim. He had no further recourse under the CSRA as it existed at that time. *But see* Pub.L.

No. 101–12, § 3(a)(13), 103 Stat. 29 (codified at 5 U.S.C. § 1221(a) (Supp. V 1993)) (giving employees who formerly had no right of appeal the right to seek board review after seeking corrective action from Special Counsel).

5. LeBlanc also suggests that the CSRA is irrelevant because he was removed in 1987, before the 1989 effective date of the Whistleblower Protection Act, which amended the CSRA's whistleblower provisions. But whatever the impact of the 1989 amendments, it is clear that even before it was amended the CSRA did provide protection to some employees from whistleblower reprisal—just not to LeBlanc. *See Knollenberg v. Merit Sys. Protection Bd.,* 953 F.2d 623, 625 (Fed.Cir.

■ The CSRA superseded preexisting remedies for all federal employees, even those who had no remedy or only limited remedies under the new system, for all types of personnel action within its scope. *See Fausto,* 484 U.S. at 448, 108 S.Ct. at 674 (exclusion of certain employees is a "manifestation of a considered congressional judgment that they should not have statutory entitlement to review for adverse action of the type governed by" the CSRA). With this in mind, we turn to the question whether Congress intended to create in section 3730(h) a right of action for employees like LeBlanc in the Court of Federal Claims.

■ LeBlanc contends that the creation in 1986 of whistleblower protection in the False Claims Act evinces congressional intent to supplement CSRA remedies with broader protection for federal whistleblowers who, like him, would be left without an effective remedy under the existing statutory framework. But he has not directed us to any statutory language that even hints that Congress intended to subject the federal government to suit under section 3730(h). To be sure, the statute gives "any employee" a substantive right to relief from his employer, but the mere existence of a right is not enough. There is a waiver of sovereign immunity, and therefore subject matter jurisdiction in the Court of Federal Claims, only if the authority creating that right "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Eastport S.S. Corp. v. United States,* 372 F.2d 1002, 1009, 178 Ct.Cl. 599 (1967); *see also Testan,* 424 U.S. at 401, 96 S.Ct. at 954 (rejecting argument "that all substantive rights of necessity create a waiver of sovereign immunity such that money damages are available to redress their violation").

Indeed, the only relevant language in section 3730(h) counsels otherwise: "An employee may bring an action *in the appropriate district court of the United States* for the relief provided in this subsection." 31 U.S.C. § 3730(h) (emphasis added).[6] A provision of jurisdiction in the district courts hardly supports a waiver of sovereign immunity in the Court of Federal Claims, especially in light of the CSRA's comprehensive treatment of review of federal personnel actions. We see no clear statement in section 3730(h) of a congressional intent to create a remedy for federal employees in addition to those provided in the CSRA, and we decline to create one by implication.

■ As to the damages claims, LeBlanc maintains that he should not be denied his portion of the government's alleged settlement with Raytheon simply because the district court dismissed his suit, since, he says, that dismissal resulted from the government's illegal interference. The short answer is that these are tort claims, over which the Court of Federal Claims has no jurisdiction. *See Florida Rock Indus. v. United States,* 791 F.2d 893, 898 (Fed.Cir.1986) ("The Tucker Act suit in the [Court of Federal Claims] is not, however, available to recover damages for unauthorized acts of government officials."); *Eastport S.S. Corp.,* 372 F.2d at 1010 (no Tucker Act jurisdiction over tort claims against the government).

LeBlanc apparently recognizes this, and says instead that there is Tucker Act jurisdiction based on the False Claims Act which expressly creates a substantive right enforceable against the government—the relator's right to receive a portion of the proceeds of the action. But the district court found, and the First Circuit confirmed, that LeBlanc was not a proper relator—that his action was barred under section 3730(e)(4)—so he has no right to recover under the statute.

■ LeBlanc encourages us to distinguish between his *qui tam* action and this suit on grounds that he now seeks damages he suffered as a result of the government's

1992). Accordingly, the question is whether the original CSRA or the False Claims Act applies here.

**6.** LeBlanc counters only with a passage from the legislative history, stating that " 'employers' should include public as well as private sector

entities." S.Rep. No. 345, 99th Cong., 2d Sess. 34–35 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5300. But as the government suggests, this language might apply only to entities in state and local governments. It does not provide the clear statement of congressional intent necessary to waive sovereign immunity.

interference with his ability to conduct the *qui tam* suit. But, even ignoring the jurisdictional bar to tort claims in the Court of Federal Claims, to prove that he was injured by the government's interference, as he must to get damages, LeBlanc would have had to show that he would have recovered but for that interference. That would require the court to determine that LeBlanc had a valid *qui tam* suit under the False Claims Act. The Court of Federal Claims has no authority to make that determination because *qui tam* suits may only be heard in the district courts. 31 U.S.C. § 3732(a).

Finally, we turn to LeBlanc's contention that the Court of Federal Claims should have transferred his case to a district court pursuant to 28 U.S.C. § 1631 (1988) if it had no jurisdiction. That section provides that when a court in which an action is filed "finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed." In this case, a transfer would not be in the interest of justice. LeBlanc's wrongful termination claim is barred by the CSRA. He has had ample opportunity to pursue his *qui tam* suit; the district court held that his suit was barred, and, as we said, he is bound by its ruling. *See Federated Dep't Stores v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981) (res judicata consequences of judgment unaltered "by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case"). Justice does not require that he have yet another shot at litigating these claims. *See Galloway Farms v. United States,* 834 F.2d 998, 1000–01 (Fed. Cir.1987). We see no abuse of discretion in the court's decision to dismiss.

### Conclusion

Accordingly, the judgment of the Court of Federal Claims is affirmed.

*AFFIRMED.*