**Vern W. ENGLERT, Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 95–390C.

United States Court of Federal Claims.

July 18, 1997.

Vern W. Englert, Tucson, AZ, pro se.

Paul S. Padda, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, with whom were the Assistant Attorney General and the Director, David M. Cohen, for defendant.

## OPINION

HORN, Judge.

The above-captioned case is presently before this court on defendant's motion to dismiss for lack of jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC). Plaintiff in this action seeks compensation from the United States for an alleged wrongful termination from employment with the Small Business Administration ("SBA"). In his complaint, plaintiff charges "violation of due process and Plaintiff's statutory due process rights the foundation being 'Wrongful Discharge, and Handicap Discrimination in violation of § 501 of the Rehabilitation Act of 1973, as amended 29 U.S.C. § 791 et seq....'" The plaintiff also alleges that the "[p]laintiff suffered a job related depression episode causing total disability per U.S. Department of Labor (and U.S. Small Business Administration) decision January 9, 1989, a job related disability retroactive to September 19, 1986. Plaintiff files his Complaint for contract back wages. Plaintiff also claims Judgment by default in the Lower U.S. District Court of Arizona." Plaintiff claims back pay for his "two separate positions" for a total of $616,454.00.[1] Defendant denies liability, and responds by arguing that the court lacks jurisdiction to hear plaintiff's claims.

### FACTUAL BACKGROUND

According to the documents submitted by the plaintiff,[2] plaintiff was a "nineteen year

---

1. In his complaint, plaintiff claims back pay in the amount of $616,454.00. In plaintiff's subsequent "Reply To The Defendant Counsel's Motion to Dismiss," however, the plaintiff claims back pay in the amount of $647,038.00.

2. Plaintiff is pursuing the above-captioned case *pro se.* Consequently, the court has taken great pains to try to decipher plaintiff's multiple and often confusing filings, continual addenda, revisions, and unrelated submissions in order to give

tenured employee with the Government," having commenced his employment on December 14, 1976. On May 7, 1984, the plaintiff allegedly signed a Government Employment Agreement to transfer to a new duty station at the San Francisco District Office of the Small Business Administration, without a change in pay grade (GS 12, Step 4). While at the San Francisco District Office, plaintiff apparently performed the duties of a Senior Loan Specialist and International Trade Representative (a GS 12 or 13 job). Plaintiff also states in his Reply to Defendant's Motion to Dismiss that "the Government changed his pay grade to an *11*, subsequently forging his name in the top right corner of his Assignment of Duties."

According to the plaintiff, he commenced receiving treatment under the United States Small Business Administration Confidential Psychological Counseling Program on September 19, 1986. Also, according to the plaintiff, "[w]hile under treatment, the Government subjected the Plaintiff to daily reprimands, increased stress, untimely sixty (60) day performance improvement periods, the Plaintiff was forbidden to consult with his supervisory senior loan officer Warren Knightlinger, the Plaintiff's dictation equipment was confiscated, and the Plaintiff was continually burdened under an overload/overwork situation preventing his recovery from the job related work injury. On March 20, 1987, the Plaintiff's physician placed him on disability sick leave...." On April 14, 1987, while on sick leave, the plaintiff allegedly received, via mail, a termination notice from the government. Plaintiff claims that he had received incomplete performance ratings, an allegedly prohibited personnel practice, and that he was discriminated against on the basis of a handicapping condition. The plaintiff also alleges that the government committed fraud against him, failed to accord him his due process rights, made libelous and slanderous statements about plaintiff's apparent mental state, and violated his right to privacy and the confidentiality of his medical records.

The plaintiff appealed his termination to the Merit Systems Protection Board (the "Board"). The Board issued an initial decision on August 11, 1987. A final decision of the Merit Systems Protection Board in the case of *Englert v. Small Business Administration*, Docket No. SF04328710485, 35 M.S.P.R. 628 (1987), denying plaintiff's petition for review of the August 11, 1987 initial decision, was issued on December 11, 1987, *Englert v. Small Business Admin.*, 35 M.S.P.R. 628 (1987), *aff'd*, 848 F.2d 1245 (Fed.Cir.), *cert. denied*, 488 U.S. 858, 109 S.Ct. 151, 102 L.Ed.2d 123, *reh'g denied*, 488 U.S. 977, 109 S.Ct. 522, 102 L.Ed.2d 555 (1988). In the initial decision, the Administrative Judge found that prior to termination plaintiff had been properly notified of his unacceptable performance, including poor analysis on loan applications he was processing, and was given a 60–day performance improvement period, additional counseling, and additional training during that period. The Administrative Judge also rejected plaintiff's allegations that, during the performance improvement period, he suffered from and manifested significantly increased signs of stress and memory difficulties. In sum, the Administrative Judge found that, during the relevant period, plaintiff's job performance was unsatisfactory. The Administrative Judge also rejected plaintiff's claim that the agency's action was a result of handicap discrimination, and found that plaintiff did not qualify as a handicapped individual under 29 C.F.R. § 1613.702(f). Moreover, the Administrative Judge found that Mr. Englert had failed to establish a causal connection between his psychological condition and his performance.

Furthermore, in the December 11, 1987 decision of the Board, plaintiff was informed of his right to seek further review of the Board's decision with regard to his discrimination claims, either before the Equal Em-

---

the *pro se* plaintiff the benefit of the doubt on both the legal and factual issues raised. The court further notes that, although the plaintiff's submissions were repetitive and voluminous, they were factually incomplete. Therefore, the court was forced to recreate the administrative

record and case history. Copies of the decisions issued by the Merit Systems Protection Board, Arizona and California United States District Courts, and the United States Court of Appeals for the Ninth Circuit were obtained by this court.

ployment Opportunity Commission ("EEOC") or in an appropriate United States district court. Plaintiff also was informed of his right to seek further review of the Board's decision with regard to his non-discrimination claims before the United States Court of Appeals for the Federal Circuit.

Plaintiff appealed to the United States Court of Appeals for the Federal Circuit. On May 11, 1988, the United States Court of Appeals for the Federal Circuit affirmed the Board's decision "on the basis of the initial decision of the administrative judge," and sustained the termination for unacceptable performance. *Englert v. Small Business Administration,* 848 F.2d 1245 (Fed.Cir. 1988) (Table Decision) (full decision found at 1988 WL 45342). Furthermore, the plaintiff's application for a writ of certiorari from the United States Supreme Court was denied, *Englert v. Small Business Administration,* 488 U.S. 858, 109 S.Ct. 151, 102 L.Ed.2d 123 (1988), and the plaintiff's subsequent application for rehearing on the denial of certiorari was also denied, *Englert v. Small Business Administration,* 488 U.S. 977, 109 S.Ct. 522, 102 L.Ed.2d 555 (1988).

On June 15, 1988, the U.S. Department of Labor, Office of Workers' Compensation Programs held a hearing regarding a separate claim by plaintiff for compensation under 5 U.S.C. § 8101 *et seq.* Subsequently, on January 9, 1989, the U.S. Department of Labor, Employment Standards Administration, Office of Workers Compensation Programs, sent a letter to Mr. Englert, stating:

Upon receipt of Dr. Cata's report, we have accepted your case for Major Depressive Episode. We find that this condition was brought about by your duties as Loan Processor. You are eligible to receive medical coverage and compensation benefits from this office. Please see the attachment for a summary of benefits.

> \*    \*    \*    \*    \*    \*

To file a claim for wage loss, please complete the enclosed CA–7 form, and forward to SBA at the address shown below.

3. Subsequent motions for reconsideration submitted to the United States District Court, District of Arizona, were denied on July 11, 1990 and September 4, 1992. *Vern W. Englert v.*

According to plaintiff's complaint, he currently "receives continuous and ongoing medical benefits under the Federal Employees' Compensation Act, 5 U.S.C. § 8101, et seq., and 29 U.S.C. § 271 for his job related injury."

On November 22, 1989, plaintiff petitioned the Equal Employment Opportunity Commission for review of the decision of the Merit Systems Protection Board concerning his allegation of handicap discrimination in violation of the Rehabilitation Act of 1973. The EEOC Office of Federal Programs issued a decision on plaintiff's petition on February 16, 1990, and sent it to the plaintiff via certified mail. The Commission stated "[t]his petition is governed by the Civil Service Reform Act of 1978 and EEOC Regulation 29 C.F.R. 1613.414 et seq." The Equal Employment Opportunity Commission found the plaintiff's petition for review was untimely, by twenty-two (22) months, and, therefore, denied consideration of the matter. The plaintiff received the decision on February 20, 1990, which informed him of his right to file a civil action in an appropriate United States district court within 30 days of his receipt of the decision. Plaintiff's complaint before this court included, as an attachment, an August 28, 1992 letter from the EEOC which states, in pertinent part:

The decision for the petition was issued February 16, 1990, and sent to you via certified mail. In the decision, you were informed of your right to file a civil action in an appropriate U.S. District Court within 30 days of your receipt of the decision. You signed for the decision on February 20, 1990.

Subsequently, the plaintiff filed claims in two United States District Courts. The United States District Court, District of Arizona, filed a June 8, 1990 order, which dismissed the case without prejudice for improper venue pursuant to 42 U.S.C. § 2000e– 5(f)(3). *Vern W. Englert v. James Abdnor, etc.,* Case No. CIV–90–154–TUC–RMB (D.Ariz. June 8, 1990) (order).[3] Subsequent-

*James Abdnor,* No. CIV 90–154 TUC RMB (D.Ariz. February 2, 1995) (order). Thereafter, plaintiff submitted a letter directly to the United States District Court, District of Arizona, request-

ly, the United States District Court, Eastern District of California also dismissed plaintiff's employment discrimination action against the Small Business Administration,[4] and stated:

> Englert initially filed this complaint in the United States District Court in Tucson, Arizona on March 22, 1990. However, that action was dismissed by order filed on June 8, 1990 on the ground that proper venue is in Fresno [the United States District Court, Eastern District of California]. The dismissal was without prejudice, it being stated that '[p]laintiff has the option of refiling this lawsuit in a court which has proper jurisdiction and venue.' Plaintiff thereafter filed a motion to reconsider, which motion was denied by the district court on July 11, 1990. As noted, plaintiff did not file his complaint with this court until September 24, 1990.
>
> The court concludes that plaintiff's complaint was untimely filed with this court. Although plaintiff timely filed his complaint in the District Court in Tucson and was given leave to refile his action in this court, he did not do so until more than 60 days following the denial of the motion for reconsideration by the District Court in Tucson. Plaintiff was made aware by the EEOC that he had to file his complaint with the appropriate district court within 30 days of the receipt by him of the EEOC's decision denying his petition for review on the grounds of untimeliness. In dismissing the action filed in Arizona, the district court made clear that venue was appropriate in Fresno. However, plaintiff delayed more than two months before filing his action in this court. There are no allegations in the complaint which would excuse this untimeliness.

Englert v. Small Business Administration, No. CV–F–90–597 REC (E.D.Cal. July 29, 1992) (order), aff'd, 990 F.2d 1257 (9th Cir. 1993), appeal after remand, Englert v. Small Business Administration, 28 F.3d 105 (9th Cir.1994) (Table Decision) (full decision found at 1994 WL 273869), cert. denied, 513 U.S. 1086, 115 S.Ct. 742, 130 L.Ed.2d 644, reh'g denied, 513 U.S. 1185, 115 S.Ct. 1180, 130 L.Ed.2d 1132 (1995). The plaintiff appealed the decision of the United States District Court, Eastern District of California, to the United States Court of Appeals for the Ninth Circuit, which affirmed the decision of the district court in an unpublished opinion. Englert v. Small Business Administration, 28 F.3d 105 (9th Cir.1994) (Table Decision) (full decision found at 1994 WL 273869). Furthermore, the plaintiff's application for a writ of certiorari from the United States Supreme Court was denied, Englert v. Small Business Administration, 513 U.S. 1086, 115 S.Ct. 742, 130 L.Ed.2d 644 (1995), and the plaintiff's subsequent application for rehearing on the denial of certiorari also was denied, Englert v. Small Business Administration, 513 U.S. 1185, 115 S.Ct. 1180, 130 L.Ed.2d 1132 (1995).

Finally, while plaintiff was filing complaints in numerous federal courts, he concurrently sought, on April 20, 1995, to reopen his case before the United States Merit Systems Protection Board. The Merit Systems Protection Board responded with the following letter:

> Dear Sir:
>
> This is in response to your filing dated April 20, 1995, asking that the Board reopen the case of Vern Englert v. Small Business Administration, Docket No. SF–0432–87–0485–I–1.

ing a third reconsideration of the dismissal for lack of proper venue, which was denied. Vern W. Englert v. James Abdnor, et al., No. CIV 90–154 TUC RMB (D.Ariz. February 2, 1995) (order). Plaintiff filed another motion in the United States District Court, District of Arizona, to reopen his case, which was denied on May 15, 1995. Plaintiff's again attempted to reopen his case in the United States District Court, District of Arizona, and was again denied on June 2, 1995. Vern W. Englert v. James Abdnor. et al., No. CIV 90–154 TUC RMB (D. Ariz. June 2, 1995) (order).

4. Plaintiff later filed as many as eight motions to reopen the case and two motions for reconsideration. On October 27, 1992, after six of the above motions were filed, plaintiff filed his notice of appeal of the denial of his motions for reconsideration to the United States Court of Appeals for the Ninth Circuit. The Ninth Circuit dismissed the plaintiff's appeal for lack of jurisdiction in an unpublished decision. Englert v. Small Business Administration, 990 F.2d 1257 (9th Cir.1993) (Table Decision) (full decision found at 1993 WL 115217).

A review of Board records indicates that you have exhausted your administrative and judicial appeals concerning this matter. The Board issued a final decision on December 11, 1987, and in that decision, informed you of your right to seek further review. The records further indicate that you have sought judicial review and review through the Equal Employment Opportunity Commission.

There is no provision in the Board's regulations for the parties to ask the Board to reopen an appeal. To the extent you are may be asking the Board to exercise its discretion to reopen your case pursuant to 5 C.F.R. 1201.117, your request is denied.

Thus, it is clear that plaintiff has sought redress in many other jurisdictions prior to filing the above-captioned complaint in this court.

### DISCUSSION

When considering a motion to dismiss, the court may consider all relevant evidence in order to resolve any disputes as to the truth of the jurisdictional facts alleged in the complaint. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988). The court is required to decide any disputed facts which are relevant to the issue of jurisdiction. *Id.* at 747. The basic standards for weighing the evidence presented by the parties when evaluating a motion to dismiss for lack of jurisdiction, pursuant to RCFC 12(b)(1), and/or a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(4), have been articulated by the United States Supreme Court and the United States Court of Appeals for the Federal Circuit, as follows: "in passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); accord *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir.1989); *see also Alaska v. United States*, 32 Fed. Cl. 689, 695 (1995), *appeal dismissed by* 86 F.3d 1178 (Fed.Cir.1996). The court must presume that the undisputed factual allegations included in the complaint

by plaintiff are true. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d at 746; *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977); *Alaska v. United States*, 32 Fed. Cl. at 695.

The burden of establishing jurisdiction is on the plaintiff. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936); *Alaska v. United States*, 32 Fed. Cl. at 695; *Catellus Dev. Corp. v. United States*, 31 Fed. Cl. 399, 404 (1994). The court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Moreover, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983).

In order for this court to have jurisdiction over plaintiff's complaint, the Tucker Act, 28 U.S.C. § 1491 (1994), requires that a substantive right, which is enforceable against the United States for money damages, must exist independent of 28 U.S.C. § 1491. The Tucker Act provides:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). The Tucker Act, however, merely confers jurisdiction on the United States Court of Federal Claims; it does not create a substantive right enforceable against the United States for money damages. *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607, *reh'g denied*, 446 U.S. 992, 100 S.Ct. 2979, 64 L.Ed.2d 849 (1980) *(Mitchell I)*; *United States v. Testan*, 424 U.S. 392, 398–99, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114

(1976); *United States v. Connolly,* 716 F.2d 882, 885 (Fed.Cir.1983) (*en banc*), *cert. denied,* 465 U.S. 1065, 104 S.Ct. 1414, 79 L.Ed.2d 740 (1984).

■ Moreover, a waiver of the traditional sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969). The individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. *United States v. Testan,* 424 U.S. at 398, 96 S.Ct. at 953. Stated otherwise, "in order for a claim against the United States founded on statute or regulation to be successful, the provisions relied upon must contain language which could fairly be interpreted as mandating recovery of compensation from the government." *Cummings v. United States,* 17 Cl.Ct. 475, 479 (1989), *aff'd,* 904 F.2d 45 (Fed.Cir.1990); *see also United States v. Mitchell,* 463 U.S. 206, 216–17, 103 S.Ct. 2961, 2967–68, 77 L.Ed.2d 580 (1983) (*Mitchell II*) (citing *United States v. Testan,* 424 U.S. at 400, 96 S.Ct. at 954 (quoting *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 607, 372 F.2d 1002, 1009 (1967))); *Duncan v. United States,* 229 Ct.Cl. 120, 138, 667 F.2d 36, 47 (1981), *cert. denied,* 463 U.S. 1228, 103 S.Ct. 3569, 77 L.Ed.2d 1410 (1983).

This court's predecessor, the United States Court of Claims, articulated the jurisdiction of this court, pursuant to 28 U.S.C. § 1491, in *Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002 (1967), as follows:

> Section 1491 of Title 28 of the United States Code allows the Court of Claims to entertain claims against the United States 'founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort'. But it is not every claim involving or invoking the Constitution, a federal statute, or a regulation which is cognizable here. The claim must, of course, be for money.

*Id.* at 605, 372 F.2d 1002 (citations omitted).

In his complaint, plaintiff alleges the following jurisdictional bases for his claim be-fore this court: 1) "The Federal Tort Claims Act, 18 U.S.C. § 2671 et seq.;" 2) fraud; 3) "Wrongful Discharge, and Handicap Discrimination in violation of § 501 of the Rehabilitation Act of 1973, as amended 29 U.S.C. § 791 et seq....."; and 4) violation of plaintiff's due process and statutory due process rights. As discussed below, however, and as the defendant correctly maintains, none of plaintiff's various claims, even assuming they are true, vest this court with the requisite jurisdiction to entertain the claims which plaintiff raises in the above-captioned lawsuit.

■ With respect to plaintiff's allegations that this court's jurisdiction derives from the Federal Tort Claims Act, this court's basic jurisdictional statute, the Tucker Act, explicitly states, "(a)(1) The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States ... not sounding in tort." 28 U.S.C. § 1491 (1994); *see also Brown v. United States,* 105 F.3d 621, 623 (Fed.Cir. 1997), *reh'g denied* (April 17, 1997); *Shearin v. United States,* 992 F.2d 1195, 1197 (Fed. Cir.1993). In reviewing the jurisdiction of this court, the United States Court of Appeals for the Federal Circuit has stated the following:

> It is well settled that the United States Court of Federal Claims lacks-and its predecessor the United States Claims Court lacked-jurisdiction to entertain tort claims. The Tucker Act expressly provides that the 'United States Court of Federal Claims shall have jurisdiction ... in cases *not* sounding in tort.' 28 U.S.C. § 1491(a)(1) (1988) (emphasis added), *as amended by* Federal Courts Administration Act of 1992, Pub.L. No. 102–572, § 902(a), 106 Stat. 4506; *see Aetna Casualty and Surety Co. v. United States,* 655 F.2d 1047, 1059, 228 Ct.Cl. 146 (1981).

*Shearin v. United States,* 992 F.2d at 1197.

■ Jurisdiction to hear tort claims is exclusively granted to the United States District Courts under the Federal Tort Claims Act. 28 U.S.C. 1346(b) (1994);[5] *see also*

---

**5.** 28 U.S.C. § 1346(b) provides as follows:

(b) Subject to the provisions of chapter 171

Wood v. United States, 961 F.2d 195, 197 (Fed.Cir.1992); Martinez v. United States, 26 Cl.Ct. 1471, 1476 (1992), aff'd, 11 F.3d 1069 (Fed.Cir.1993). Plaintiff's claims for monetary damages, which arise out of the alleged negligent and wrongful conduct of the defendant in the course of discharging official duties, are claims clearly sounding in tort. See Smithson v. United States, 847 F.2d 791, 794 (Fed.Cir.1988), cert. denied, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989); Berdick v. United States, 222 Ct.Cl. 94, 99, 612 F.2d 533, 536 (1979); Curry v. United States, 221 Ct.Cl. 741, 746, 609 F.2d 980, 982–83 (1979); Blazavich v. United States, 29 Fed. Cl. 371, 374 (1993). Similarly, this court has no jurisdiction to entertain allegations of fraudulent actions of government employees. Brown v. United States, 105 F.3d at 623. This court has no jurisdiction over allegations by plaintiff which may be characterized as based upon tort, including any claims by plaintiff of fraud or breach of duty or negligence. Therefore, defendant's motion to dismiss for lack of subject matter jurisdiction should be granted with regard to plaintiff's claim of jurisdiction under the Federal Tort Claims Act and with regard to claims of misconduct by government officials, fraudulent or otherwise.

■ Plaintiff also claims jurisdiction under the Rehabilitation Act, 29 U.S.C. § 701 et seq. In its motion to dismiss for lack of subject matter jurisdiction, pursuant to RCFC 12(b)(1), defendant relies primarily on United States v. Fausto, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830, reh'g denied, 485 U.S. 972, 108 S.Ct. 1250, 99 L.Ed.2d 448 (1988), and LeBlanc v. United States, 50 F.3d 1025 (Fed.Cir.1995), for the proposition that "the United States Court of Federal Claims lack[s] jurisdiction to decide the claim of a suspended employee for back pay because of the comprehensive and integrated nature of the Civil Service Reform Act ('CSRA')." Defendant also points out that "[t]he Supreme

Court held that the CSRA was intended to replace the old system of administrative forums, and judicial review in the district courts and Court of Claims."

Federal employees may not be granted "access to the courts beyond that provided in Title 5 itself." Hamlet v. United States, 63 F.3d 1097, 1107 (Fed.Cir.1995), cert. denied, —— U.S. ——, 116 S.Ct. 1542, 134 L.Ed.2d 646 (1996). The Civil Service Reform Act of 1978 (CSRA), Pub.L. No. 95–454, 92 Stat. 1111 (1978) (codified as amended in various sections of Title V of the United States Code), was enacted to replace "the patchwork system with an integrated scheme of administrative and judicial review...." of personnel actions in the civil service system. United States v. Fausto, 484 U.S. at 445, 108 S.Ct. at 672–73; LeBlanc v. United States, 50 F.3d at 1029. As stated by the United States Court of Appeals for the Federal Circuit, "[t]he CSRA superseded preexisting remedies for all federal employees, even those who had no remedy or only limited remedies under the new system, for all types of personnel action within its scope." LeBlanc v. United States, 50 F.3d at 1030.

The court in Fausto described the CSRA as consisting of three main sections which govern personnel actions taken against members of the civil service. United States v. Fausto, 484 U.S. at 445, 108 S.Ct. at 672–73. According to the Fausto court, the three main sections of the CSRA consist of Chapter 43, which governs personnel actions based on unacceptable job performance; Chapter 23, which forbids an agency to engage in certain prohibited personnel practices, including unlawful discrimination, coercion of political activity, nepotism, and reprisal against so-called whistleblowers; and finally, Chapter 75, which governs adverse actions taken against employees for the efficiency of the service, which include actions based on misconduct. Id. at 445–47,

of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by

the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.
28 U.S.C. § 1346(b) (1994).

108 S.Ct. at 672–74. Under each of the main sections listed above, the court noted that a distinction exists in the treatment of the different classifications of employees. The three main classifications of employees are "Senior Executive Service" employees, 5 U.S.C. § 3132(a)(2); "competitive service" employees, 5 U.S.C. § 2102; and "excepted service" personnel, 5 U.S.C. § 2103.[6]

■ In *Fausto*, the court also provided general guidance with regard to all CSRA claims, as follows:

> [W]e find that under the comprehensive and integrated review scheme of the CSRA, the Claims Court [now the United States Court of Federal Claims] (and any other court relying on Tucker Act jurisdiction) is not an 'appropriate authority' to review an agency's personnel determination.... Post–CSRA, such an authority would include the agency itself, or the MSPB or the Federal Circuit where those entities have the authority to review the agency's determination.

*United States v. Fausto*, 484 U.S. at 454, 108 S.Ct. at 677. This general holding of *Fausto* has been adopted by the United States Court of Appeals for the Federal Circuit with regard to all CSRA claims. *Hamlet v. United States*, 63 F.3d 1097, 1107 (Fed.Cir.1995); *LeBlanc v. United States*, 50 F.3d at 1030; *Booth v. United States*, 990 F.2d 617, 619 (Fed.Cir.1993). As stated in *Romero v. United States:* "the CSRA provides 'the only means of review as to the types of adverse personnel action specifically *covered* by the CSRA."' *Romero v. United States*, 38 F.3d 1204, 1211 (Fed.Cir.1994)(quoting *United States v. Fausto*, 484 U.S. 439, 448, 108 S.Ct. 668, 674, 98 L.Ed.2d 830 (1988)). Moreover, jurisdiction is not created in the United States Court of Federal Claims solely because a plaintiff has no remedy under the CSRA. *LeBlanc v. United States*, 50 F.3d at 1029–30.

The United States Court of Appeals for the Federal Circuit, however, also has indicated that there is no presumption that a court, which relies on Tucker Act jurisdiction, is precluded from hearing a "type of personnel action" that is " 'not covered at all by the CSRA.' " *Romero v. United States*, 38 F.3d at 1211 (holding that the CSRA was not intended to preclude an action for income tax improperly withheld from a plaintiff's pay under the Back Pay Act; and, quoting *Bosco v. United States*, 931 F.2d 879, 883 (Fed.Cir. 1991)); *Bosco v. United States*, 976 F.2d 710, 713–14 (Fed.Cir.1992) (holding that the CSRA did not remove jurisdiction from the Claims Court over a non-adverse downgrading, pursuant to the reclassification of plaintiff's job position under the Prevailing Rate wage legislation).

■ Although the facts in *Fausto* are limited to a Back Pay Act claim for an adverse action taken against a nonpreference member of the excepted service for "efficiency of the service," based on Chapter 75 of the CSRA, this court is bound by the overall guidance of the United States Supreme Court in *Fausto*, that claims falling within the statutory scheme of the CSRA are not reviewable in this court. In the above-captioned case, plaintiff has claimed discrimination pursuant to the Rehabilitation Act of 1973, which is appropriately addressed under Chapter 23 of the CSRA. Additionally, the supporting documents submitted with plaintiff's claim indicate that he was dismissed for "performance deficiencies," and that the plaintiff's overall performance had declined.

---

6. In *Fausto* the court described the constituency of each classification.

The CSRA divides civil service employees into three main classifications that can be generally described as follows: 'Senior Executive Service' employees are those who occupy high-level positions in the Executive Department, but for whom appointment by the President and confirmation by the Senate is not required. 5 U.S.C. § 3132(a)(2). 'Competitive service' employees are all other employees for whom nomination by the President and confirmation by the Senate is not required, and who are not specifically excepted from the competitive service by statute or by statutorily authorized regulation. § 2102. 'Excepted service' personnel are the remainder—those who are in neither the competitive service nor the Senior Executive Service. § 2103....

Within each of the three classifications of employment, the Act accords preferential treatment to certain veterans and their close relatives—so-called "preference eligibles." § 2108. *United States v. Fausto*, 484 U.S. at 441, n. 1, 108 S.Ct. at 670, n. 1.

Although plaintiff did not claim jurisdiction under Chapter 43 of Title 5 of the United States Code, any request for judicial review based upon dismissal for unacceptable job performance also would necessarily lie under the CSRA. *United States v. Fausto*, 484 U.S. at 445–46, 108 S.Ct. at 672–73. Therefore, since the CSRA exclusively governs federal personnel matters, and plaintiff's performance dismissal necessarily falls under the CSRA, there is no jurisdiction in this court. See *Booth v. United States*, 990 F.2d 617, 619 (Fed.Cir.1993), *reh'g denied* (May 24, 1993).

The plaintiff also alleges that his "due process" or "statutory due process" rights have been violated in a variety of ways. For example, plaintiff states that "[t]he U.S. District Court of Arizona in Tucson, Arizona has repeatedly denied the Plaintiff his due process rights by saying, 'It was not clear which District Court had proper venue of the matter under the applicable statutory provisions.'" Plaintiff also states:

> How can there be an honest government, when the entire judicial system wants to deny due process. You really have to wonder, whoever takes a good look at themselves in a mirror, and who really takes the time to search their own soles [sic]? So what really happened? In some cases judicial misconduct is under review in the courts; in others, a denial of due process, and violation of statutory law occurred. Plaintiff's son thinks the courts are prone to deny due process for whatever reason, and it's next to impossible to obtain any entitlement rights to a hearing in the courts. Judicially speaking our country is being destroyed, and that's very sad for every American citizen. When it happens to one of you, you'll better understand all the inequities. God help us all!

This court, however, has no jurisdiction over claims based upon the due process guarantees of the Fifth Amendment which do not create an independent causes of action for money damages.[7] *LeBlanc v. United States*, 50 F.3d at 1028. The United States Court of Appeals for the Federal Circuit has stated: "Although the Fifth Amendment's due process clause provides that no person shall be deprived of property without due process of law, no language in the clause itself requires the payment of money damages for its violation." *Murray v. United States*, 817 F.2d 1580, 1583 (Fed.Cir.1987) (citing *Inupiat Community of the Arctic Slope v. United States*, 230 Ct.Cl. 647, 662, 680 F.2d 122, 132, *cert. denied*, 459 U.S. 969, 103 S.Ct. 299, 74 L.Ed.2d 281 (1982)); *see also Earnest v. United States*, 33 Fed. Cl. 341, 344 (1995). Therefore, the due process allegations raised in the plaintiff's complaint do not present causes of action cognizable in this court, and should be dismissed.

The plaintiff also has written to the Office of the Vice–President of the United States and has received two letters in response. Both letters informed Mr. Englert that he should continue to work through agency or government officials or seek legal representation, and informed Mr. Englert that the Office of the Vice–President is unable to assist him with his case due to insufficient staff. The plaintiff interpreted the letters to mean, however, that this case should be referred to the Office of the Vice–President for resolution, or that the case should be suspended in order to allow congressional caseworkers to help the plaintiff with his case. Neither the Office of the Vice–President, nor congressional caseworkers, however, can create jurisdiction in this court.

Finally, plaintiff claimed that the United States Court of Federal Claims is a United States district court pursuant to Title 28 of the United States Code. Given the opportunity to prove this claim, however, plaintiff was unable to direct the court to a section of the statute which grants such jurisdiction. In fact, plaintiff admitted the weakness of this argument by stating, "[i]f I could have found that reference, the U.S. Court of Federal

---

7. This court notes that although a Fifth Amendment due process violation does not create a cause of action for money damages, this court does have jurisdiction under the Takings Clause of the Fifth Amendment which states, "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. Plaintiff in this case, however, has not presented a cognizable takings claim requiring just compensation under the Fifth Amendment of the United States Constitution.

Claims would simply say, it's a misprint because the two court systems are distinct entities within the Federal judicial system." In essence, plaintiff was unable to support this assertion, which has no foundation in law.

### CONCLUSION

After an exhaustive review of the record in the instant case, the court **GRANTS** defendant's motion to dismiss. The court, therefore, directs the Clerk of the Court to enter judgment in favor of the defendant and to **DISMISS** plaintiff's complaint, with prejudice.

**IT IS SO ORDERED.**