NEW JERSEY INSTITUTE OF
TECHNOLOGY, Plaintiff–
Appellant,

v.

MEDJET, INC., Eugene I. Gordon, and
Peretz Feder, Defendants–
Appellees,

and

Rosenman & Colin, LLP,
Defendant–Appellee.

New Jersey Institute of Technology,
Plaintiff–Appellant,

v.

Graham & James, LLP, Defendant–
Appellee.

No. 00–1495.

United States Court of Appeals,
Federal Circuit.

DECIDED: Oct. 1, 2002.

Before MICHEL, RADER, and
PROST, Circuit Judges.

MICHEL, Circuit Judge.

New Jersey Institute of Technology
("NJIT") appeals from a United States
District Court for the District of New Jer-
sey ruling granting Defendants–Appellees'
motions to dismiss NJIT's 1999 lawsuit.
*New Jersey Institute of Technology v.
Medjet, Inc., Gordon, Feder, Rosenman &
Colin, LLP, Graham & James, LLP,* No.
99–1734, slip op. (D.N.J. June 30, 2000).
The trial court granted the motion to dis-
miss exclusively on the ground that the
suit is barred by res judicata as a result of
a 1998 lawsuit brought in the same court
by NJIT. Because 35 U.S.C. § 256, which
was the basis for several of the prayers for
relief in the 1999 suit, was not included in
NJIT's 1998 lawsuit and because the 1998
lawsuit was dismissed for lack of subject
matter jurisdiction rather than on the mer-
its, res judicata does not apply to the 1999
lawsuit and we *reverse and remand.*

## BACKGROUND

In 1998, NJIT brought a lawsuit against Medjet, Inc., Eugene I. Gordon, Peretz Feder (collectively "Medjet, et al."), Israel Nissenbaum, Rosenman & Colin, LLP ("Rosenman"), and Graham & James, LLP ("Graham").[1] NJIT's complaint in the 1998 suit included counts for declaratory relief based on 35 U.S.C. § 116 and a number of state law causes of action in contract and tort. At the basis of the lawsuit was a single patent: U.S. Patent No. 5,556,406 ("Gordon II") with named inventors Gordon, Feder and M. Ekramul Kahn. NJIT had applied to patent a similar invention ("Gordon I") on behalf of its "employee," Gordon and others.[2] NJIT claimed that the Gordon II invention was at least in part conceived and reduced to practice by and with the use of technology belonging to NJIT, by NJIT employees and on NJIT equipment while Gordon and Kahn were employees of NJIT. NJIT also claimed, as a result, that it has rights to the Gordon II invention under its patent policy and under an assignment contract. NJIT's attorney, Nissembaum, prosecuted both Gordon I for NJIT and Gordon II for Medjet, et al., without making any disclosures to NJIT regarding the existence of the Gordon II application or Nissembaum's representation of Gordon and Medjet. NJIT, thus, believed that Nissembaum's two employers, Rosenman and Graham, were negligent in their hiring and employment of Nissembaum and vicariously liable for Nissembaum's alleged misconduct under the doctrine of respondeat superior. NJIT sought to be declared noninfringing of Gordon II, to have Gordon II declared invalid, and to receive money damages. NJIT argued that the federal court had federal question subject matter jurisdiction over the § 116 claims under 28 U.S.C. §§ 1331, 1338, 2201, and 2202, and supplemental jurisdiction over all of the state law claims. The trial court declared the § 116 claims inapplicable to the facts, denied NJIT's request to amend the complaint to include § 256, and found that without any federal claim, the state law claims had neither supplemental jurisdiction nor diversity jurisdiction to sustain them. The lawsuit was dismissed as to all parties relevant to this lawsuit for lack of subject matter jurisdiction.

NJIT brought the present action against Medjet, et al., Rosenman, and Graham, again in the United States District Court for the District of New Jersey in April 1999.[3] The complaint in this suit is almost identical to the one from the 1998 lawsuit; the only real differences being in the elimination of one party (Nissenbaum) and the relied upon statute from § 116, to § 256. The trial court dismissed the present suit on the ground that res judicata applied because NJIT had "re-filed an identical complaint." NJIT now appeals the dismissal. The issue before this court is whether the trial court's finding of res judicata was correct.[4]

## DISCUSSION

A holding that a claim is barred by res judicata presents a question of law that we

1. There was also a state court action brought by the Defendants which was removed to federal court and then later remanded back to state court.

2. U.S. Patent No. 5,964,775 is a continuation-in-part of the Gordon I application that was abandoned.

3. The suit was subsequently stayed as to Graham pursuant to 11 U.S.C. § 362, so this opinion applies only to Medjet, et al., and Rosenman.

4. The trial court refers somewhat ambiguously to issues and claims interchangeably in its discussion about the applicability of res judicata. *N.J. Instit. of Technology,* slip op. at 4.

review de novo. *Faust v. United States,* 101 F.3d 675, 677 (Fed.Cir.1996). Res judicata in the form of claim preclusion[5] is a bar to a lawsuit when there has been a judgment on the merits in a prior suit involving the same parties or their privies based on the same cause of action. *Lawlor v. Nat'l Screen Serv. Corp.,* 349 U.S. 322, 326, 75 S.Ct. 865, 99 L.Ed. 1122 (1955). There are, thus, three separate requirements: (1) an adjudication on the merits, (2) the same parties, and (3) the same cause of action.[6] There is no question in this case that the two lawsuits involve the same parties. The other two requirements of claim preclusion are, therefore, the only two issues here.[7]

## A.

■ Whether the 1999 lawsuit meets the "same cause of action" requirement is not immediately obvious in this case. On the one hand, NJIT relies on a different statute, 35 U.S.C. § 256, in its 1999 complaint than it did in its 1998 complaint. On the other hand, § 256 was discussed during the hearings on the 1998 lawsuit and the same facts underlie both lawsuits.[8] In fact, the trial court judge explicitly refused to allow NJIT to amend the complaint in the 1998 lawsuit to include § 256, thereby both seeming to have "considered" the cause of action in the very broadest sense of the word considered, and to have very deliberately excluded § 256 from the case. Thus, from a common sense perspective, the § 256 claim was both a part of the first action and not part of it. However, our own precedent provides guidance about how to discern whether or not the same cause of action existed, and even more

"It is the general rule that issue preclusion attaches only 'when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment.'" *Arizona v. California,* 530 U.S. 392, 414, 120 S.Ct. 2304, 147 L.Ed.2d 374 (2000) (quoting Restatement (Second) of Judgments § 27, p. 250 (1982)). Since the trial court's opinion starts to apply the test for claim preclusion, makes no reference to any factors of the test for issue preclusion, and finally holds that the "doctrine of res judicata squarely applies to the plaintiff's federal *claims,*" (emphasis added) we will assume that the issue on appeal is whether or not a finding of claim preclusion was correct. *N.J. Instit. of Technology,* slip op. at 4, 6.

5. The term "claim preclusion" will be used in lieu of "res judicata" throughout this opinion, consistent with most modern usage.

6. There is also an implicit fourth requirement, namely that there be a final judgment. NJIT argues that because Nissenbaum was not formally and explicitly dismissed from the 1998 lawsuit, there was no final judgment. Their argument is that the December 30, 1998 "Order" given by the trial court, which dismissed the claims against the rest of the defendants, did not refer to Nissenbaum, so the Order did not fully and finally adjudicate all claims against the parties. We find this reasoning unconvincing and irrelevant. We agree with the Defendants–Appellees' contentions that there was a final decision in the 1998 lawsuit. More importantly, any ambiguity about the finality of the decision is not relevant to this lawsuit because the ambiguity could have been easily remedied if NJIT had genuine confusion as to the status of the case. NJIT's inaction constitutes a waiver of any such argument, at least with respect to all of the parties in this lawsuit because they were all clearly dismissed from the 1998 lawsuit.

7. The trial court erroneously referred to only two requirements for claim preclusion: the same parties and the same cause of action. However, the on the merits adjudication requirement is of equal importance.

8. NJIT's argument that there was newly discovered evidence in the 1999 lawsuit that was not part of the 1998 lawsuit is unpersuasive in view of the extreme degree of similarity between the fact section of its 1999 complaint and the fact section of its 1998 complaint.

importantly, Third Circuit[9] precedent offers a consistent and explicitly applicable interpretation of the requirement.

In *Jet, Inc. v. Sewage Aeration Systems,* 223 F.3d 1360, 1362 (Fed.Cir.2000), this court interpreted the "same cause of action" requirement as meaning a reliance on the same facts. The relevant text says:

> a second suit will be barred by claim preclusion if: (1) there is identity of parties (or their privies); (2) there has been an earlier final judgment on the merits of a claim; and (3) *the second claim is based on the same set of transactional facts as the first.*

*Id.* (emphasis added). This court's interpretation was derived from *Migra v. Warren City School District Board of Education, et al.,* 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984), in which the Supreme Court, by way of foundation in a case about the preclusive effect of a state-court judgment, asserted that "[c]laim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Id.* Therefore, while *Jet* does not bind the outcome in this case,[10] it offers an apt and useful interpretation of the Supreme Court's pronouncements of the law. Because the 1999 lawsuit was premised on the same facts as the 1998 lawsuit, under *Jet* the cause of action is arguably the same. It is also certainly true that NJIT could have brought its § 256 claims in 1998. Under *Migra* and the interests of judicial economy and finality embodied by the doctrine of claim preclusion, NJIT should not get another chance to bring a § 256 cause of action.

Third Circuit precedent leads even more unquestionably to the same conclusion. In *Huck ex rel. Sea Air Shuttle Corp. v. Dawson,* 106 F.3d 45 (3d Cir.1997), the court held that the application of a res judicata bar to the assertion of the plaintiff's claims was appropriate because the claims "could have been properly raised and litigated" by the plaintiff's prior action. *Id.* at 49. The court held this even though the plaintiff had been denied leave to amend to add the claims in question to its complaint in the prior action. *Id.* With respect to the same cause of action requirement, the facts and arguments in *Huck* parallel those in this case exactly. The legal conclusion from the facts must also be the same.

In light of all relevant precedent, regardless of our opinion that the § 256 claims were not properly in front of the trial court in the 1998 lawsuit and the fact that clear precedent establishes that § 256 does confer federal question jurisdiction,[11] we must find that the claim preclusion

---

**9.** Third Circuit precedent controls on issues that are not within the exclusive jurisdiction of this court so Third Circuit interpretation of the same cause of action requirement is dispositive. *See Hartley v. Mentor Corp.,* 869 F.2d 1469, 1471 n. 1 (Fed.Cir.1989) (finding that "[t]he application of principles of res judicata and collateral estoppel is not a matter committed to the exclusive jurisdiction of this court" and looking to the law of the Ninth Circuit where an appeal would lie in other cases from the district court in question); *see also Vardon Golf Co., Inc. v. Karsten Mfg. Corp.,* 294 F.3d 1330, 1333 (Fed.Cir. 2002) (holding that because "the application of collateral estoppel is not a matter within the exclusive jurisdiction of this court, this court applies the law of the circuit in which the district court sits" (citation omitted)).

**10.** The holding in *Jet* was opposite—the court found that there were different facts and therefore different claims—and claim preclusion did not apply.

**11.** *See MCV, Inc., v. King–Seeley Thermos Co.,* 870 F.2d 1568 (Fed.Cir.1989), for a discussion of federal jurisdiction over § 256 claims. *See also Stark v. Advanced Magnetics, Inc.,* 119 F.3d 1551 (Fed.Cir.1997).

"same cause of action" requirement of *Lawlor* is met, albeit perhaps indirectly. The § 256 claims could have been brought in the 1998 lawsuit because the underlying transaction in the 1998 lawsuit was identical to that of the 1999 lawsuit. The fact sections of NJIT's two complaints make this clear. To be consistent with the test as articulated in *Jet* and the holding of *Huck,* we must take the stance that it is dispositive that NJIT *could* have brought the § 256 claims in the 1998 lawsuit even if NJIT did not actually bring those claims. We, thus, agree with the Defendants–Appellees' arguments that the court must act as though NJIT did bring the § 256 claims for purposes of the "same cause of action" requirement of claim preclusion.

### B.

■ It is only on the third requirement of claim preclusion that NJIT's 1999 lawsuit fails, meaning that claim preclusion does not apply. There simply was no "on the merits" adjudication in the 1998 federal lawsuit because the lawsuit was dismissed for lack of subject matter jurisdiction. Under Rule 41(b) "any dismissal not provided for in this rule, *other* than a dismissal for lack of jurisdiction ... operates as an adjudication on the merits." Fed. R. of Civ. P. 41(b) (emphasis added). Because of this, a dismissal for lack of jurisdiction does not preclude a second action based on the same cause of action that includes claims that overcome the initial defect of jurisdiction. 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4435 at 139 (2d ed. 2002); *see, e.g., Hughes v. United States,* 4 Wall. 232, 71 U.S. 232, 237, 18 L.Ed. 303 (1866) (saying in particular that "[i]n order that a judgment may constitute a bar to another suit, it must be rendered in a proceeding between the same parties or their privies, and the point of controversy must be the same in both cases, and must be determined on its merits. If the first suit was dismissed for ... the want of jurisdiction, or was disposed of on any ground which did not go to the merits of the action, the judgment rendered will prove no bar to another suit"). In fact, for purposes of Rule 41, "jurisdiction" is very broadly construed to include any reason for dismissal that is more of a pre-condition than a consideration of the merits— even if the technical basis for dismissal was for failure to state a claim. *See Costello v. United States,* 365 U.S. 265, 285– 87, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961) (holding that Rule 41 codified the common law rule that a dismissal on a ground not going to the merits was not a bar to a subsequent action on the same claim, and further explaining that the policy behind treating certain dismissals under Rule 41 as on the merits and certain others as not being on the merits is that only those where "the defendant has been put to the trouble of preparing his defense because there was no initial bar to the Court's reaching the merits" create a bar to a subsequent action). Rule 41, therefore, certainly disallows a dismissal for lack of federal question subject matter jurisdiction from being considered an adjudication "on the merits," and thus the adjudication in NJIT's 1998 lawsuit cannot be considered "on the merits" for purposes of potential claim preclusion of NJIT's 1999 lawsuit.

Defendants–Appellees cite a number of cases in support of their argument that the dismissal of the 1998 lawsuit constituted a dismissal on the merits for purposes of res judicata, but none of the cases they rely on actually hold that *claim preclusion* applies to a subsequent action after a dismissal for lack of subject matter jurisdiction. The cases at most support the proposition that *issue preclusion,* rather than claim preclusion exists as to the finding of no subject

matter jurisdiction with respect to the particular claims and parties in the first action.[12] As the claims are based on a different statute in the 1999 lawsuit, § 256, issue preclusion cannot exist as to the determination of subject matter jurisdiction. Because NJIT was not permitted to amend its complaint in the 1998 federal lawsuit to include a § 256 claim, the federal court's subject matter jurisdiction created precisely by the § 256 claim was not decided in the 1998 federal lawsuit, therefore, nothing about the subject matter jurisdiction of the § 256 claim is precluded.

Moreover, an additional reason to reverse in this case is that even when the application of claim preclusion is at all questionable, unlike in this case where it clearly does not apply, we are required to settle the question about whether to apply it to bar a lawsuit in favor of those opposing the application of claim preclusion. Equity compels courts to allow litigants to bring their claims when it is not clear whether the litigants have already had adequate opportunity to do so. *See Brown v. Felsen,* 442 U.S. 127, 132, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) (suggesting that in order to avoid shielding "the fraud and the cheat as well as the honest person," courts should apply claim preclusion only after careful inquiry into whether the interests served by res judicata are met). In particular, we must resolve the ambiguity in the scope of an earlier decision in favor of the litigants opposing res judicata. *Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 875–76 (3d Cir.1972) (explaining that "[w]hile the doctrine of res judicata is meant to foster judicial efficiency and protect defendants from the oppression of repeated litigation, it should not be applied inflexibly to deny justice"). In this case, because a valid claim under § 256 does create federal subject matter jurisdiction and NJIT has had no opportunity to present evidence supporting its § 256 claims, the interest in allowing NJIT to have its day in court, outweighs the interests of judicial economy in having the case conclusively resolved.

## C.

■ Defendant–Appellee Rosenman urges us in its brief to take judicial notice of "the state court decisions and orders which determined that Gordon alone conceived of the Gordon II patent, that Gordon and Medjet, not NJIT, own the Gor-

---

**12.** Medjet, et al. quote from *American Surety Co. v. Baldwin,* 287 U.S. 156, 166, 53 S.Ct. 98, 77 L.Ed. 231 (1932), that "the principles of res judicata apply to questions of jurisdiction as well as to other *issues.*" (emphasis added). This reference by the Supreme Court to res judicata is really a statement about issue preclusion and not one about claim preclusion. This is made even clearer by the fact that after the phrase that the Defendants–Appellees cite, the *American Surety* opinion goes on to explain that what matters is whether "the *issue* was *made and open to litigation* in the original action." *Id.* (emphases added). This was clearly a test of issue preclusion, both because of the use of the word "issue," and also because the test is whether the issue was actually litigated which is a prerequisite to issue preclusion only. Similarly, *Bromwell v. Michigan Mutual Insurance*

*Co.,* 115 F.3d 208 (3d Cir.1997), clearly states the rule that a dismissal for subject matter jurisdiction is "not binding as to all matters which could have been raised." *Id.* at 212–13 (citation omitted). In addition, in contrast to Medjet, et al.'s contention, *Jet,* 223 F.3d at 1362, says nothing about dismissals for lack of jurisdiction, much less saying that they result in claim preclusion. Finally, none of the other cases cited by Medjet are binding on this court. Rosenman accurately relies on *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), for its description of the broadness of the "same cause of action" requirement of claim preclusion, but offers no binding precedent for why a dismissal for lack of subject matter jurisdiction constitutes an "on the merits adjudication" barring all further claims.

don II patent, and that all of the causes of action alleged in NJIT's Third–Party Complaint against Rosenman and Graham & James were dismissed with prejudice." Rosenman also implies that claim preclusion and issue preclusion on the basis of the state court's various decisions are reasons for us to affirm the District Court for the District of New Jersey's dismissal with respect to Rosenman. For a number of reasons, we do not conclude that we are bound by any aspect of the state court action, *Medjet, Inc. v. New Jersey Institute of Technology, et al.,* No. L–6576–99 (N.J.Super.Ct. Essex County), in the case before us at this time.

To begin with, claim preclusion certainly does not apply. First, Rosenman refers to 28 U.S.C. § 1738, the full faith and credit statute that gives state courts authority to render judicial decisions that rest on their own interpretations of federal law that will be binding on federal courts. The full faith and credit statute does not, however, force us to affirm the lower court's decision in *this* case. One reason is that, unlike in the 1999 federal suit, neither the complaint nor the answer and counter-claims in the state court case make any reference to § 256. More importantly, the state court was very careful and clear about the fact that its decision to dismiss Rosenman was based on its prior conclusion that NJIT had no ownership rights stemming from the "patent policy" as analyzed under state contract law, and the fact that the allegations against Rosenman "must fall because those claims arise out of NJIT's purported

ownership rights." *Medjet, Inc., et al., v. N.J. Instit. of Tech., et al.,* No. L–6579–99 (N.J.Super.Ct. Essex County Aug. 8, 2000) (transcript of decision). The state court claims against Rosenman were, therefore, rendered nonexistent exclusively because of the court's contractual analysis. The court never considered any causes of action against Rosenman in which the patent was the foundation. In contrast, the 1999 federal lawsuit requires the application of patent law under § 256 as a threshold matter to the determination of ownership and all other causes of action. It therefore cannot be precluded by a previous, state court case based entirely upon a contract and contract law.[13] Thus, while our own precedent would force us to honor the state court decision to dismiss the claims against Rosenman (*see Syntex Ophthalmics, Inc. v. Novicky,* 767 F.2d 901 (Fed.Cir.1985)) if the causes of action were the same, that precedent is inapplicable because the causes of action are different. Second, the same equitable reasons that persuade us that we should not treat the 1998 federal lawsuit as preclusive are equally persuasive as to why we are required to decline to take judicial notice of the decisions and orders entered in the state court action.

There also cannot be any *issue* preclusion with respect to the state court decisions and orders because, as Rosenman itself emphasizes, the state court's transcript decision made clear that its opinion was rendered on contractual and state law issues because it had no jurisdiction to consider and was not considering federal

**13.** Unlike our assessment of claim preclusion as a result of the 1998 federal lawsuit, there is no way that the "same cause of action" requirement should be construed broadly to include the fact that NJIT could have brought claims under § 256 and, therefore, act as though NJIT did already bring those claims as well. The difference is that the state court

independently limited the case against Rosenman to a dependence on contract. To say that NJIT could have brought patent law claims would be to ignore the fact that the state court found a state law issue dispositive and considered no additional claims actually brought by NJIT, no matter what they were.

patent law issues. *See Medjet, Inc., et al., v. N.J. Instit. of Tech., et al.,* No. L–6579–99 (N.J.Super.Ct. Essex County May 22, 2000) at 77–80 (transcript of "Decision"). Therefore, any patent law issue of inventorship under § 256 was not decided and there can be no issue preclusion. Rosenman's characterization that the state court determined "that Gordon alone conceived of the Gordon II patent" is at best a misstatement. We find no indication that the state court ruled on conception. Since the full faith and credit statute only precludes a federal court's redetermination of the *same* matters (assuming state law itself would require preclusion), it is not a sufficient basis for us to dismiss all of the claims against Rosenman in this case. *See Commissioner v. Sunnen,* 333 U.S. 591, 600, 68 S.Ct. 715, 92 L.Ed. 898 (1948) (explaining that "collateral estoppel must be used with its limitations carefully in mind so as to avoid injustice. It must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged. If the legal matters determined in the earlier case differ from those raised in the second case, collateral estoppel has no bearing on the situation." (citations omitted)). The state court's determination about state-law matters may be binding on this court under the full faith and credit statute, but it is only those particular issues that are binding.[14] At most the state court interpreted Gordon's contractual relationship with NJIT and that determination may be binding. This determination does not, however, dispose of all of the relevant issues in the lawsuit and does not even fully determine all aspects of patent ownership since inventorship is still at issue. The other issues in this lawsuit are at least interrelated with, if not dependent on the inventorship issues, and, as a consequence, none of them can be deemed to have been necessarily decided in the context of established inventorship if the foundation of the inventorship issues has not been decided first. Certainly no state law issue alone is dispositive of the claims against Rosenman or the other Defendants–Appellees in this lawsuit. So while the state court may have concluded it was appropriate to dismiss Rosenman from the state lawsuit based on a resolution of contractual patent ownership, we cannot do the same because different issues affected by different legal principles are involved.

### D.

In light of the fact that no preclusion applies, we reverse the United States District Court for the District of New Jersey's dismissal of NJIT's 1999 federal lawsuit and remand the case for proceedings on the merits of the § 256 claim, and any others which can properly be heard with that claim (by supplemental jurisdiction or independent bases for subject matter jurisdiction).

### COSTS

Each party to bear its own costs.

---

14. "The conclusion that the full faith and credit clause ordinarily will command deference to state law of course does not mean that issue preclusion will always flow from a state judgment to related federal litigation. Preclusion attaches only to the extent that a common issue is presented. If the issues are different, there is no preclusion." 18A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction* § 4470.2 at 198 (2d ed.2002) (citing *Columbia Steel Casting Co. v. Portland Gen. Elec. Co.,* 111 F.3d 1427, 1441–42 (9th Cir.1996), and *RX Data Corp. v. Dep't. of Social Serv.,* 684 F.2d 192, 196–98 & nn. 3, 4 (2d Cir.1982)).