# In the United States Court of Federal Claims

No. 25-122

Filed: April 17, 2025

---

**JAMES W. TINDALL,**

        *Plaintiff*,

**v.**

**THE UNITED STATES,**

        *Defendant.*

---

*James W. Tindall*, Marietta, GA, *Pro Se* Plaintiff.

*Bryan M. Byrd*, Trial Attorney, Commercial Litigation Branch, Civil Division, *Elizabeth M. Hosford*, Assistant Director, *Patricia M. McCarthy*, Director, *Yaakov M. Roth*, Acting Assistant Attorney General, U.S. Department of Justice, Washington, D.C., for Defendant.

## MEMORANDUM OPINION AND ORDER

Legal claims are singular verses, not choruses intended to be repeated. *Res judicata* is a legally binding effort for courts to avoid unnecessary repetition. The United States moves to dismiss Plaintiff James Tindall's ("Mr. Tindall") Complaint in accordance with the principles of *res judicata*, claiming that he has asserted these same claims and failed.[1] (Def.'s Mot., ECF No. 7). This assertion is correct; Mr. Tindall's claims are precluded.[2] Accordingly, the United States' Motion is **GRANTED**.[3]

---

[1] Pursuant to RCFC 7.2(b)(2), a reply to a response *may* be filed within fourteen days after service of the response. *Compare* RCFC 7.2(b)(1) ("a response or an objection to a written motion *must* be filed within 28 days after service of the motion . . .") (emphasis added). The Court does not believe that supplemental briefing will assist in this matter, thus a Reply is unnecessary.

[2] Mr. Tindall's first bite at the apple occurred in September of 2023 when he attempted the same set of claims before the undersigned. *Tindall v. United States*, Case No. 23-757 (dismissed under RCFC 12(b)(1) and 12(b)(6)); *Tindall v. United States*, 167 Fed. Cl. 440 (2023) (*Tindall I*), *aff'd*, No. 2024-1143, 2024 WL 960452 (Fed. Cir. Mar. 6, 2024), *cert. denied*, 145 S. Ct. 282 (2024).

[3] While Mr. Tindall has since filed an Amended Complaint, (Am. Compl., ECF No. 8), the Court finds that the amended pleading does not assert new facts or claims. The United States' arguments, while specific to the initial Complaint, apply to the Amended Complaint as well.

# I.    Background

Following former President Biden's declaration of a national emergency regarding Russian activities and subsequent invasion of Ukraine in early 2022, the U.S. Office of Foreign Assets Control ("OFAC") imposed sanctions prohibiting transactions in securities of specified Russian entities, including a Russian majority state-owned banking and financial services company ("Sberbank"). Exec. Order No. 14,024, 86 Fed. Reg. 20249 (Apr. 15, 2021) ("EO 14,024"). This directive affected owners of Sberbank shares, including Mr. Tindall. (*See generally* Am. Compl., ECF No. 8).

Given the Executive Order, Mr. Tindall's broker, Charles Schwab, informed him that he had until May 25, 2022 to divest the Sberbank shares to non-U.S. persons, after which the shares would be blocked in an escrow account accessible only with OFAC permission. (Am. Compl. at 8). In lieu of divesting the shares, Mr. Tindall vehemently protested, sending multiple letters to President Biden, government officials, and Charles Schwab between April 2022 and February 2023. (*Id*. at 8–12). The overall tone of those letters was that blocking Mr. Tindall's shares constituted an unconstitutional taking of his property under the Fourth and Fifth Amendments. (*Id*. at 8–9).

Unable to access his shares, Mr. Tindall's primary desire was compensation. (Am. Compl. at 9–11). His letters continued, initially offering the United States two purchase options—a $25 per share (buyout) or $1 per share per week (rental). (*Id*. at 8–9). On the government's radio silence, Mr. Tindall later claimed the United States' act of blocking the shares constituted acceptance of his terms, and escalated his demands to $1,000,000, and then $5,000,000 per violation, adding penalties and interest for non-payment. (*Id*. at 9 ("I value my constitutional rights at $1,000,000 per violation, plus cumulative interest."), 10 ("[T]he going rate for each constitutional right is now $5,000,000/per violation.")).

This is not the first time the Court is faced with these facts from Mr. Tindall. In May of 2023, Mr. Tindall came before the Court of Federal Claims with three claims. "First, he argue[d] that the United States willfully violated his Fifth Amendment due process rights. Second, he claim[ed] the United States knowingly breached an existing contract with him. And third, he allege[d] that the United States' actions amounted to an unconstitutional taking of his property without just compensation." *Tindall I*, 167 Fed. Cl. at 444. The Court dismissed those claims in September of 2023, and the Federal Circuit affirmed that decision the following March. *Tindall v. United States*, No. 2024-1143, 2024 WL 960452 (Fed. Cir. Mar. 6, 2024). The Supreme Court denied certiorari thereafter. 145 S. Ct. 282 (2024).

Undeterred from his prior failure, (Am. Compl. at 4–5 (acknowledging prior lawsuit)), Mr. Tindall returned to this Court on January 21, 2025 and amended his Complaint on April 14. (*See* Compl., ECF No. 1; Am. Compl.). His renewed allegations, involving the same operative facts, assert claims for: (1) breach of implied contract, (Am. Compl. at 13–18, 24); (2) 4,800 violations of the takings clause, (*id.* at 18–20, 25); and (3) 2,400 due process violations, (*id.* at 21–22, 25).

## II. Analysis

The United States moves to dismiss Mr. Tindall's claims under RCFC 12(b)(6) arguing that they are barred by *res judicata*. (*See generally* Def.'s Mot. (citing *Tindall I*, 167 Fed. Cl. 440)). The Court agrees.

A motion to dismiss for failure to state a claim upon which relief can be granted is governed by Rule 12(b)(6). This rule requires dismissal when a complaint fails to state a "claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). At the pleading stage, the plausibility standard does not impose a probability requirement; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence to support the plaintiff's allegations. *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018). Under Rule 12(b)(6) a claim must be dismissed "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002).

While the Court acknowledges that pro se plaintiffs are not expected to frame issues with the precision of attorneys, *Roche v. U.S. Postal Serv.*, 828 F.2d 1555, 1558 (Fed. Cir. 1987), even pro se litigants must allege "plausible" facts sufficient to satisfy both the requirements of subject-matter jurisdiction and the necessary elements of a claim as a matter of law for which relief may be granted. *See Stephanatos v. United States*, 306 F. App'x 560, 564 (Fed. Cir. 2009) (stating that arguments should be "fleshed out."). This standard necessarily implicates the doctrine of *res judicata*. *See Palafox Street Assoc., L.P. v. United States*, 114 Fed. Cl. 773, 780 (2014) (citing *Chisolm v. United States*, 82 Fed. Cl. 185, 193 (2008), *aff'd*, 298 Fed. Appx. 957 (Fed. Cir. 2008) (noting that because "claim preclusion rests on a final judgment on the merits, it can quite properly and naturally be raised via a merits-based RCFC 12(b)(6) motion[.]")).

"*Res judicata*," or "a matter already judged," traditionally refers to two similar legal effects: (1) claim preclusion and (2) issue preclusion, also called "collateral estoppel." *Baker v. General Motors Corp.*, 522 U.S. 222, 233 n.5 (1998). "Application of both doctrines is central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdictions." *Montana v. United States*, 440 U.S. 147, 153 (1979). Issue preclusion typically pertains to a matter that was actually litigated, while claim preclusion forecloses matters arising out of the same facts which should have been litigated but were not. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). Here, while both doctrines would apply, the Court only addresses the broader doctrine of claim preclusion.

"Claim preclusion applies when '(1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first.'" *Phillips/May Corp. v. United States*, 524 F.3d 1264, 1268 (Fed. Cir. 2008) (quoting *Ammex, Inc. v. United States*, 334 F.3d 1052, 1055 (Fed. Cir. 2003)). It is undisputed that the parties in both suits are Mr. Tindall and the United States. (*See* Compl. at 3 ("This [C]omplaint . . . is directly related to [*Tindall I*] because it involves the same parties[.]"); Am. Compl. at 5 ("The amended 2025 complaint is related to the 2023 Complaint, because it involves the same parties[.])). Therefore, the first element is satisfied.

As to whether *Tindall I* proceeded to final, valid judgment on the merits, the Court finds that it did. Mr. Tindall's claims were dismissed in *Tindall I*, and those findings were affirmed in full. 167 Fed. Cl. 440; 2024 WL 960452. Specifically, the Court dismissed Mr. Tindall's takings and contractual breach claims, finding that he failed to present a facially valid claim upon which relief could be granted. 167 Fed. Cl. at 445–47 (dismissal pursuant to RCFC 12(b)(6)). "Dismissals for failure to state a claim upon which relief can be granted are judgments on the merits, and, thus, entitled to *res judicata* effect." *eVideo Inc. v. United States*, 136 Fed. Cl. 164, 169 (2018), *aff'd* 748 F. App'x 327 (Fed. Cir. 2019); *see also Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981). Thus, the judgment as to Mr. Tindall's breach and takings claims were valid, final judgments.

As to Mr. Tindall's prior assertion of a due process violation, *Tindall I* dismissed that claim based on a failure to establish jurisdiction under RCFC 12(b)(1). 167 Fed. Cl. at 445. Jurisdictional determinations typically have a preclusive effect. *See Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982) ("It has long been the rule that principles of [finality] apply to jurisdictional determinations—both subject matter and personal."). While the Rules of this Court state that dismissal for lack of jurisdiction does not operate as an adjudication on the merits, the finality of the judgment still applies. *See Milgroom v. United States*, 122 Fed. Cl. 779, 794 (2015) (citing RCFC 41(b)), *aff'd*, 651 F. App'x 1001 (Fed. Cir. 2016). That is, a jurisdictional determination may have a preclusive effect to bar matters previously litigated if the plaintiff fails to allege additional claims to cure the jurisdictional defect in a subsequent court action. *See Lowe v. United States*, 79 Fed. Cl. 218, 229 (2007) ("[A] prior dismissal does preclude the same action based on the same facts unless the jurisdictional flaw that necessitated dismissal of the first suit has been cured.") (citing *New Jersey Institute of Tech. v. Medjet, Inc.*, 47 Fed. Appx. 921, 925 (Fed. Cir. 2002)). There is no question that the Due Process clause of the Fifth Amendment does not mandate the payment of money. *See Tindall*, 2024 WL 960452, at *2 (citing *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995)). Standing alone, a due process violation claim can *never* satisfy the jurisdictional requirements in this Court. Accordingly, the jurisdictional defect has not been cured. The finality of that decision renders the *Tindall I* judgment final and valid in totality.

The heart of Mr. Tindall's claims lies with the deprivation of access to his Sberbank shares. (*See generally* Am. Compl.). These were the same issues central to *Tindall I*. 167 Fed. Cl. at 443–44. The inquiry into whether two claims involve the same transactional facts must be conducted "pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Phillips/May Corp.*, 524 F.3d at 1271 (quoting RESTATEMENT (SECOND) JUDGMENTS § 24(2) (1982)). In identifying which facts are transactional, courts "have defined 'transaction' in terms of a 'core of operative facts,' the 'same operative facts,' or the 'same nucleus of operative facts,' and 'based on the same, or nearly the same, factual allegations.'" *Barajas v. United States*, 154 Fed. Cl. 318, 323 (2021) (citing *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1363 (Fed. Cir. 2000). Here, using Mr. Tindall's own original verbiage, "[t]his [C]omplaint . . . is directly related to [*Tindall I*] because it . . . is based on the same claims[.]" (Compl. at 3). There can be no doubt that this case arises out of the same transactional facts as *Tindall I*.

4

Mr. Tindall objects to the United States' Motion to Dismiss in total, (Pl.'s Resp., ECF No. 9), and submitted an Amended Complaint, (Am. Compl. at 1 (stating the document is filed "in response to Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6)")). Mr. Tindall's primary addition is that this suit is different from *Tindall I* as it is intended to secure "relief from defendant's ongoing and <u>continuing</u> breaches of the implied contract between the parties for defendant's ongoing and <u>continuing</u> possession, control and use of plaintiff's property, as well as defendant's numerous ongoing and <u>continuing</u> violations of plaintiff's 5th Amendment constitutional rights." (*Id.* at 3–4 (emphasis in original)). Mr. Tindall attempts to distinguish these claims as being based on the United States' "incremental conduct" occurring separately after his *Tindall I* complaint was dismissed. (*Id.* at 5). However, Mr. Tindall's failure to show that his new claims are based on new government action bars them from forming the basis of a new lawsuit. Even if Mr. Tindall's claims were not precluded, his Amended Complaint is not based on new allegations and does not cure the defects contained in his original pleading.

The only "new" allegation seems to be a new theory of the United States' acceptance to form a contract. The Federal Circuit resoundingly affirmed *Tindall I* finding that the United States' actions did "not constitute acceptance of Mr. Tindall's alleged offer[,]" which was fatal to his breach of contract claim. 2024 WL 960452, at *2. He now characterizes the United States' act of taking possession of his stocks as the moment of the United States' acceptance. (Am. Compl. at 14). Even were the Court to consider the merits of this argument, Mr. Tindall's reasoning is circular. For contract formation, acceptance must be in *response* to an offer. *See* RESTATEMENT (SECOND) OF CONTRACTS § 22(1) (1981). Mr. Tindall learned of his shares being blocked on April 26, 2022. (Am. Compl. at 8). His letters to the United States began the next day. (*Id.*). The stocks were placed in escrow on May 25, 2022. (*Id.* at 11). Characterizing blocking his Sberbank shares as formal acceptance from the United States ignores the inevitability that blocking the shares would have happened with or without Mr. Tindall's "offers." A plaintiff cannot assert that a pre-existing government action, which would have occurred regardless of the plaintiff's offer, constitutes valid acceptance necessary to form a contract. Consequently, the Court finds that Mr. Tindall asserts no new governmental actions occurred that may constitute acceptance or a separate contract.

Mr. Tindall's entire argument hinges on a finding that the continuous holding of his stocks occurred after dismissal of *Tindall I* and therefore qualify as new events. (Pl.'s Resp. at 4, 7). However, the continuous nature of Mr. Tindall's allegations by themselves cannot constitute a separate cause of action. In some cases, new and independent breaches by the government may be treated as separate causes of action under the continuing claims doctrine. *Westlands Water Dist. v. United States*, 109 Fed. Cl. 177, 212–13 (2013) (citing *Boling v. United States*, 220 F.3d 1365, 1373–74 (Fed. Cir. 2000)). For continuing claims, "the plaintiff's claim must be inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages." *Wells v. United States*, 420 F.3d 1343, 1345 (Fed. Cir. 2005) (citing *Brown Park Estates-Fairfield Dev. Co. v. United States*, 127 F.3d 1449, 1456 (Fed. Cir. 1997)). But "if there was only a single alleged wrong, even though the wrong caused later adverse effects . . . the continuing claim doctrine is not applicable." *Id.* at 1345–46 (citing *Hart v. United States*, 910 F.2d 815 (Fed. Cir. 1990)). While the continuing claims doctrine is most often applied to instances examining a statute of limitations question, the Court finds it illuminating for Mr. Tindall's claims.

The United States' continuous, ongoing holding of his stocks is not a series of independent and distinct events. Because Mr. Tindall continues to suffer adverse effects from that singular action does not give rise to these new allegations. The same logic applies to Mr. Tindall's takings claim—the facts alleged cannot be broken down into separate events and therefore do not constitute a separate cause of action.[4] *See Barclay v. United States*, 443 F.3d 1368, 1375 (Fed. Cir. 2006) (holding that multiple takings claims cannot be based on a single, continuous government action). There is one government action giving rise to both cases—blocking Mr. Tindall's Sberbank shares. That the United States continues the same conduct alleged to be wrongful in *Tindall I* cannot field the basis for a new cause of action. Stated differently, *Tindall I*'s failure necessarily cannot give rise to a second phase of litigation. As each new day dawns, with no other changes, Mr. Tindall cannot claim a new cause of action in perpetuity.

Mr. Tindall's Amended Complaint does not cure the defects contained in his original pleading and his claims do not allege new causes of action. Having satisfied the three elements for claim preclusion, *res judicata* precludes Mr. Tindall's claims. Mr. Tindall seemingly wants this Court to revise its earlier findings, an act that would require contradicting itself and, importantly, the Federal Circuit. While Mr. Tindall may overestimate this Court's power, the Court does not possess the authority, nor the desire, to take such action.

### III.  Conclusion

Mr. Tindall's Complaint is a chorus to *Tindall I* and his claims are precluded. The United States' Motion to Dismiss, (ECF No. 7), is **GRANTED**. Further, the Clerk is directed to **REJECT** "Plaintiff's Notice of Directly Related Case - Declaration by Plaintiff" received on April 14, as it is a duplicate of a previously filed Notice, (ECF No. 2). The Clerk **SHALL** enter judgment accordingly. The Clerk is directed to **REJECT** any future submissions in this case unless they comply with this Court's rules regarding post-dismissal submissions.[5]

**IT IS SO ORDERED.**

*David A. Tapp*
DAVID A. TAPP, Judge

---

[4] Mr. Tindall's attempt to reassert a due process violation is also futile. As the Court has said, a due process violation claim can *never* satisfy the jurisdictional requirements in this Court because it is not money-mandating—despite Mr. Tindall's rote contention that it is. *LeBlanc*, 50 F.3d at 1028; (Am. Compl. at 21–23).

[5] This provision does not act as an anti-filing injunction or a sanction. *Allen v. United States*, 88 F.4th 983, 989 (Fed. Cir. 2023) (holding that courts must provide pro se plaintiffs with notice and opportunity to be heard before issuing an anti-filing injunction). Plaintiff is not enjoined from proper post-dismissal filings in this case, nor is Plaintiff required to seek leave before filing future actions in this Court. *See id*. This provision is a mechanism to reject non-compliant filings in the above-captioned action once it is dismissed.